## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

-------------------------------------------------------- x

| | |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| THE CONTAINER STORE GROUP, INC., *et al.*, | :    Case No. 24-90627 (ARP) |
| | : |
| Debtors.[1] | :    (Joint Administration Requested) |
| | : |

-------------------------------------------------------- x

### EMERGENCY MOTION OF DEBTORS
### FOR ENTRY OF AN ORDER (I) AUTHORIZING
### THE DEBTORS TO PAY PREPETITION TRADE CLAIMS IN THE
### ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on December 23, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on December 23, 2024 at 1:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: The Container Store Group, Inc. (5401); The Container Store, Inc. (6981); C Studio Manufacturing Inc. (4763); C Studio Manufacturing LLC (5770); and TCS Gift Card Services, LLC (7975). The Debtors' mailing address is 500 Freeport Parkway, Coppell, TX 75019.

The above-captioned debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this motion (this "***Motion***"):

## RELIEF REQUESTED

1.      By this Motion, and consistent with the unimpaired treatment of Allowed General Unsecured Claims under the Plan (each as defined herein), filed contemporaneously herewith, the Debtors seek entry of an order substantially in the form attached hereto (the "***Proposed Order***"), (i) authorizing the Debtors, in their sole discretion and in the ordinary course of business, to pay in full allowed prepetition claims of creditors (the "***Trade Creditors***") that provide goods and/or services related to the Debtors' operations (collectively, the "***Trade Claims***"), and (ii) granting related relief.  The Debtors estimate, that as of the Petition Date (as defined below), the aggregate amount of the Trade Claims is approximately $51.2 million.

2.      The Debtors further request that the Court confirm the administrative priority status of all undisputed obligations of the Debtors owing to vendors and suppliers arising from the postpetition delivery of goods and/or provision of services ordered before the Petition Date under the Prepetition Purchase Orders (as defined below) and authorize the Debtors to pay such obligations in the ordinary course of business.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution.

4.      Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief requested herein are sections 105(a), 362(d), 363(b), 503, 507(a), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

6.      On December 22, 2024 (the "***Petition Date***"), the Debtors filed voluntary petitions in the Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested and no committee has been appointed in the Chapter 11 Cases.

7.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Chad E. Coben, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions*, filed contemporaneously herewith (the "***First Day Declaration***"), which is fully incorporated herein by reference.[2]

8.      Contemporaneously with the filing of the Motion, the Debtors filed a motion with the Court pursuant to Bankruptcy Rule 1015(b) requesting joint administration of the Chapter 11 Cases for procedural purposes only.

9.      The Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing agreed restructuring and recapitalization transactions among the Debtors and their

---

[2]      Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

key stakeholders.  Prior to the Petition Date, the Debtors entered into that certain Transaction Support Agreement, dated as of December 21, 2024 (as may be amended, modified or supplemented, the "***Transaction Support Agreement***") with lenders that collectively hold over 90% of the outstanding principal amount of term loans under the Debtors' Term Loan Facility (the "***Consenting Term Lenders***"), including those certain members of an ad hoc term lender group represented by Paul Hastings LLP (the "***Ad Hoc Group***").  The holders of the outstanding principal amount of asset-backed loans under the Debtors' Prepetition ABL Facility (the "***Prepetition ABL Lenders***") are not parties to the Transaction Support Agreement.

10.     Contemporaneously herewith, the Debtors will file a prepackaged chapter 11 plan of reorganization reflecting the terms of the Transaction Support Agreement (as may be amended, modified or supplemented, the "***Plan***"), along with (a) a corresponding disclosure statement (as may be amended, modified or supplemented, the "***Disclosure Statement***") and (b) a motion seeking, among other things, (i) conditional approval of the Disclosure Statement, (ii) approval of the solicitation and notice procedures, and (iii) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan.

11.     The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired and "ride through" the Chapter 11 Cases, and brings in at least approximately $60 million of new liquidity for the Debtors to fund go forward operations.  The Debtors are seeking confirmation of the Plan as quickly as the Court's schedule and requisite notice periods will permit to implement the proposed restructuring and recapitalization transactions under the Transaction Support Agreement and Plan.

## THE DEBTORS' BUSINESS MODEL AND TRADE CREDITORS

**I.      THE DEBTORS' BUSINESS MODEL**

12.      As set forth in detail in the First Day Declaration, the Debtors are a leading specialty retail chain offering storage and organizational products, operating over 100 store locations across the United States.  The Trade Creditors, who are located both domestically and in numerous foreign jurisdictions, provide the Debtors with the essential goods and services that facilitate the Debtors' operations and the Debtors' ability to serve their customer base.  The Trade Claims include, among other things, claims of:

   a.      suppliers of inventory sold in the Debtors' stores and online, and other materials used to facilitate the sale of inventory;

   b.      service providers who provide the Debtors with certain services that are critical to the Debtors' upkeep of their business infrastructure, such as IT software and consulting, marketing services, cleaning services, and inventory reconciliation services;

   c.      vendors who provide essential maintenance services with respect to the operational needs of the Debtors;

   d.      common carriers operated by third parties, including ocean freight, trucking services, air transport, rail, and contract carriers;

   e.      third-party advertising platforms and providers of advertising and marketing services, including search-engine optimization, search-engine marketing, social-media optimization, and other digital-marketing services;

   f.      third-party toll processors and manufacturers to whom the Debtors supply (either directly or through third parties) equipment or other property which such vendors use to package, and/or produce and manufacture the Debtors' final products;

   g.      third-party installation and organization service providers with whom the Debtors contract; and

   h.      other business services vendors and other general service and operational providers that help facilitate the Debtors' sales and/or operations that are not addressed in other first day motions.

Case 24-90627   Document 16   Filed in TXSB on 12/23/24   Page 6 of 20

## II.    THE DEBTORS' TRADE CLAIMS

13.    The Debtors incur numerous fixed, liquidated, and undisputed payment obligations to the Trade Creditors in the ordinary course of business.  The Debtors estimate that, as of the Petition Date, there is approximately $51,233,000 outstanding on account of undisputed Trade Claims which are comprised of:

     a.     Prepetition claims held by vendors who provide inventory ("***Inventory Goods Vendors***" and the claims of Inventory Vendors, the "***Inventory Goods Vendor Claims***") totaling approximately $23,783,000 as of the Petition Date;

     b.     prepetition claims held by suppliers, service providers, and distributors based outside the United States ("***Foreign Vendors***" and the claims of Foreign Vendors, the "***Foreign Vendor Claims***") totaling approximately $6,219,000 as of the Petition Date;

     c.     prepetition claims held by common carriers, warehousemen, and toll processors in each case that may have or may be capable of asserting liens against the Debtors' property (collectively, the "***Lienholders***," and the claims of Lienholders, the "***Lienholder Claims***")[3] totaling approximately $4,342,000 as of the Petition Date; and

     d.     prepetition claims held by all other general unsecured creditors, including those that provide supplies and/or services utilized by the Debtors, such as professionals utilized in the ordinary course and not otherwise retained pursuant to a separate order of the Bankruptcy Court (the "***Other Trade Claims***") totaling approximately $16,889,000 as of the Petition Date.

14.    As set forth in the following chart, the Debtors seek authorization to pay, in the ordinary course of business, undisputed liquidated prepetition amounts owing on account of Trade Claims.  The Debtors estimate that as of the Petition Date the amount of outstanding Trade Claims is approximately $51.2 million:

| Category | Estimated Amount |
| --- | --- |
| Inventory Goods Vendor Claims | $23,783,000 |

---

[3]    The Debtors do not concede that any liens described in this Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such liens, and to seek avoidance thereof.

| Category | Estimated Amount |
|---|---|
| Foreign Vendor Claims | $6,219,000 |
| Lienholder Claims | $4,342,000 |
| Other Trade Claims | $16,889,000 |
| **Total Trade Claims:** | **$51,233,000** |

15.    The Debtors are not seeking to pay these amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary course of the Debtors' business, subject to any trade agreements with the Trade Creditors. Concurrently with the filing of this Motion, the Debtors have filed the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "***DIP Motion***") which, if and when granted, in addition to the cash generated by the Debtors' business, will provide the necessary additional liquidity for the Debtors to continue operating in the ordinary course of business.  As set forth in the budget (the "***Budget***") annexed to the DIP Motion, the Debtors' proposed expenditures include payment of the Trade Claims the Debtors are seeking authority to pay pursuant to this Motion.  The Debtors believe they will have ample liquidity to pay the Trade Claims in the ordinary course during the pendency of these Chapter 11 Cases.

## Conditions to Payment of Trade Claims in the Ordinary Course

16.    Unless otherwise ordered by the Court, the Debtors request authority to pay all Trade Claims on the following terms and conditions:

a.    The Debtors, in their sole discretion, may require, as a condition to receiving payment on account of Trade Claims, that Trade Creditors agree to continue to provide goods and/or services to the Debtors on terms that are as good as or better than the terms and conditions that existed 120 days prior to the

Petition Date (collectively, the "**Customary Trade Terms**") during the pendency of these Chapter 11 Cases. If, after receiving a payment under the Proposed Order, a Trade Creditor ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court to (i) determine that any payment on a prepetition claim received by such Trade Creditor be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods, or (ii) deem such payment to apply instead to any postpetition amount that may be owing to such Trade Creditor.

b.    Before making a payment to a creditor under the Proposed Order, the Debtors may, in their discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

### Treatment of Trade Claims Under the Plan

17.    The goal of the Debtors' Chapter 11 Cases is to de-lever the Debtors' balance sheet with minimal interruption to their business operations. Disruption to the Debtors' timely receipt of necessary goods and services could negatively impact the Debtors' operations and their ability to meet their commitments in the ordinary course, which could irreparably harm their businesses, damage their market reputation, and possibly result in a loss of customers and market share, all to the determinant of the Debtors' stakeholders. Accordingly, it is imperative that the Debtors maintain positive relationships with the providers of the goods and services that are essential to their business operations throughout these cases. The terms of the Plan reflect this objective by providing that Trade Creditors are unimpaired. Accordingly, the relief requested in this Motion furthers the Debtors' overarching restructuring goals to maximize the value of the estates without prejudice to the Debtors' stakeholders, all in accordance with the Plan.

18.    Furthermore, the Plan contemplates that substantially all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or before the effective date of the Plan, will be assumed under (and in accordance with) the terms of the Plan. Any outstanding amounts owed under any assumed executory contract or

8

unexpired lease will be paid or otherwise "cured" pursuant to section 365(b)(1) of the Bankruptcy Code in accordance with the terms of the Plan.

**BASIS FOR RELIEF**

**I.     PAYMENT OF THE TRADE CLAIMS IS WARRANTED UNDER SECTION 363(B)(1) OF THE BANKRUPTCY CODE**

19.     A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  11 U.S.C. § 363(b)(1).  Section 363(b)(1) authorizes courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); s*ee also In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.").  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons.  *See, e.g., In re BNP Petrol. Corp.*, 642 F. App'x 429, 434-35 (5th Cir. 2016) (*citing In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").

20.     It is a sound exercise of the Debtors' business judgment to pay the Trade Claims as they become due in the ordinary course of business because doing so will avoid value-destructive business interruption and will not prejudice the Debtors' other stakeholders.  The Plan, which the Consenting Term Lenders have agreed to support, provides for the full and uninterrupted payment of such claims.  The goods and services provided by Trade Creditors are necessary and critical for the continued, uninterrupted operation of the Debtors' businesses.  The Debtors anticipate that failure to pay the Trade Claims as they become due is likely to result in Trade Creditors refusing

to provide essential goods and services, conditioning the delivery of such goods and services on compliance with onerous and commercially unreasonable terms, or, in the case of Lienholders, seeking to assert liens on the Debtors' property.

21.     In the event Trade Creditors decide to stop doing business with the Debtors, the Debtors' business could be materially disrupted, which would jeopardize the continued viability of the Debtors' business and these cases to the detriment of all of the Debtors' stakeholders.  In addition, because the Trade Creditors are already familiar with the Debtors' needs based on the relationships that the Debtors have built with such vendors over time, the Trade Creditors are in the best position to provide the necessary goods and services to the Debtors, and are the most likely to do so on commercially reasonable terms.  If certain of the Trade Creditors refuse to perform on their obligations, the Debtors may find it very difficult (and in some cases impossible) to locate replacement vendors necessary to support their operations, making it difficult for the Debtors to maintain business operations.  Lastly, even the Debtors are able obtain replacement goods and services, doing so would likely cause substantial delay and significant costs.

22.     Importantly, no party in interest will be prejudiced by the relief requested herein. Trade Claims are unimpaired and will be paid in full under the Plan.  The relief requested herein, therefore, seeks to only alter the timing, not the amount or priority, of such payments. Furthermore, paying the modest amount of Trade Claims—approximately 21% of the total funded debt to be restructured in these cases—in the ordinary course is prudent when compared to the amount the Debtors' stakeholders stand to lose if the Debtors' businesses were to be interrupted. Accordingly, continued payment of the Trade Claims as provided herein is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors'

estates, is in the best interests of the Debtors' and their respective estates and creditors, and is warranted under the circumstances.

23.     Paying the Trade Creditors in the ordinary course of business further minimizes disruption to the Debtors' operations by ensuring that Trade Creditors agree to continue supplying necessary goods and services to the Debtors postpetition under Customary Trade Terms. Maintaining Customary Trade Terms allows the Debtors to avoid the inherent operational inefficiencies of paying cash on demand and managing billing processes for numerous vendors that require cash in advance or shorten their trade terms.

## II.     ADDITIONAL BASES FOR PAYMENT OF TRADE CLAIMS

### A.     Certain Trade Claims are Administrative Expenses

24.     Certain Trade Claims may be entitled to the statutory priority for goods delivered to the Debtors in the ordinary course of business within 20 days before the Petition Date.  Section 503(b)(9) of the Bankruptcy Code provides that such claims constitute administrative expenses of the applicable Debtor's estate.  11 U.S.C. § 503(b)(9).  The Debtors would, therefore, be required to pay such prepetition Trade Claims in *full* to confirm a plan of reorganization.  See 11 U.S.C. § 1129(a)(9)(A).  The Plan provides for payment in full of administrative expenses in the ordinary course of business or, otherwise, on the effective date of the Plan, or as soon as practicable thereafter.  Accordingly, payment of the prepetition Trade Claims that may be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code will only change the timing of the payment of such prepetition Trade Claims and not the amounts.  *See, e.g.*, *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) ("[T]he payment of prepetition . . . claims . . . that qualify as priority . . . claims . . . does not trigger the same concerns (*i.e.*, upsetting priorities under the Code and unfair discrimination among general unsecured claims)").  Thus, allowing the relief requested herein with respect to these prepetition Trade Claims will not

prejudice any creditors or parties in interest.  Finally, authorizing the Debtors to pay Trade Claims pursuant to the terms set forth herein should eliminate the burden on the Court and the Debtors arising from numerous individual motions requesting payment on account of Inventory Goods Vendor Claims.  Accordingly, the Debtors seek authority to pay such claims in the ordinary course of business to minimize disruptions to their operations and preserve the value of their estates.

**B.      Payment of Trade Claims is a Valid Exercise of the Debtors' Fiduciary Duties**

25.      In addition, authority for payment of the Trade Claims may be found in sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  *Id*.

26.      The *CoServ* court has noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id*.; *see also In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of their business judgment . . . in order for [the] [d]ebtors to continue their respective businesses").  The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id*. at 497, and also when the payment was to "sole suppliers of a given product."  *Id*. at 498.  The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss of economic advantage to
> the estate or the debtor's going concern value, which is
> disproportionate to the amount of the claimant's prepetition claim.
> Third, there is no practical or legal alternative by which the debtor
> can deal with the claimant other than by payment of the claim.

*Id.*

27.     Payment of the Trade Claims meets each element of the *CoServ* court's standard.

First, any further disruptions of the Debtors' operations that result from non-payment of such

claims would cost the Debtors' estates substantial amounts in lost revenues.   The harm and

economic disadvantage that would stem from the Debtors' failure to pay the Trade Claims are

grossly disproportionate to the amount of the prepetition claims that would have to be paid.   In

addition, the Debtors have examined other options short of paying certain of the Trade Claims and

could not discern any practical or legal alternative other than paying such Trade Claims if

significant disruption of the Debtors' business operations is to be avoided.   And, in any event the

Lienholder Claims and those of the Inventory Goods Vendor Claims that would constitute claims

under section 503(b)(9) of the Bankruptcy Code must be paid in full, in cash, for the Debtors to

emerge from chapter 11.   Therefore, the Debtors only can fulfill their fiduciary duties as debtors

in possession under sections 1107(a) and 1108 of the Bankruptcy Code by paying certain of the

Trade Creditors.

## III.     CONFIRMATION OF ADMINISTRATIVE EXPENSE STATUS OF PREPETITION PURCHASE ORDERS IS APPROPRIATE AND NECESSARY TO DEBTORS' REORGANIZATION

28.     Furthermore, as of the Petition Date, the Debtors have certain prepetition purchase

orders (the "***Prepetition Purchase Orders***") outstanding with various third party vendors and

suppliers (the "***Vendors***") for goods or services ordered by the Debtors that have not yet been

delivered or provided to the Debtors.   These Vendors may be concerned that, because the Debtors'

13

obligations under the Prepetition Purchase Orders arose before the Petition Date, such obligations will be treated as general unsecured claims in these Chapter 11 Cases.  Accordingly, and notwithstanding the Plan's treatment of general unsecured claims, certain Vendors may refuse to provide goods or services to the Debtors purchased pursuant to the Prepetition Purchase Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (i) confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods or services subject to Prepetition Purchase Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

29.     It is necessary to the uninterrupted operation of the Debtors' business that obligations owed under the Prepetition Purchase Orders for goods or services delivered or provided postpetition be explicitly granted administrative expense status.  Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority status.  *See In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 440 (5th Cir. 2019) (noting that section 503(b)(1)(A) of the Bankruptcy Code "grants priority status to certain necessary expenses incurred after the filing of a bankruptcy petition that benefit the bankruptcy estate").  Thus, the granting of the relief requested herein will not provide the Vendors with any greater priority than they otherwise would have if the relief were not granted, and will not prejudice any other parties in interest.

## IV.    NO PARTY WILL BE PREJUDICED BY THE RELIEF REQUESTED IN THIS MOTION

30.     No party in interest will be prejudiced by the relief requested by this Motion because the Trade Claims are unimpaired under the Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.

Moreover, authority to pay the Trade Claims in the ordinary course of business is necessary to avoid the risk of key vendors and service providers withholding essential services or refusing to sell goods to the Debtors.

**V.     THE COURT SHOULD AUTHORIZE BANKS TO HONOR AND PAY CHECKS ISSUED AND ELECTRONIC FUNDS TRANSFERRED TO PAY THE TRADE CLAIMS**

31.     The Debtors further request that the Court authorize, but not direct, their banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Trade Claims whether such checks were presented before or after the Petition Date.  The Debtors expect to have sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Trade Claims.  As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Trade Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

<u>**EMERGENCY CONSIDERATION**</u>

32.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i), the Complex Case Procedures, and Bankruptcy Rule 6003, which authorizes a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtors believe that an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of the Chapter 11 Cases.  As discussed in detail above,

immediate and irreparable harm would result if the relief requested herein is not granted. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003, and the Debtors believe that emergency consideration is necessary and respectfully request that this Motion be heard on an emergency basis.

## **WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)**

33.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not otherwise satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).   As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.   The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought herein justifies immediate unstayed relief.

## **RESERVATION OF RIGHTS**

34.     Nothing in this Motion shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code;

(g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

35.     Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

36.     Nothing in the Proposed Order or this Motion shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

### NOTICE

37.     Notice of the Motion will be given to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the DIP Term Loan Agents; (c) counsel to the DIP ABL Loan Agent; (d) counsel to the Ad Hoc Group and DIP Lenders; (e) counsel to the Prepetition Term Loan Agent; (f) counsel to the Prepetition ABL Agent; (g) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (h) the United States Attorney for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

38.     A   copy   of   the   Motion   is   available   on   (a)   the   Court's   website,   at www.txs.uscourts.gov,   and   (b)   the   website   maintained   by   the   Debtors'   proposed   claims   and noticing   agent,   Kurtzman   Carson   Consultants,   LLC   d/b/a   Verita   Global,   at https://www.veritaglobal.net/thecontainerstore.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 23, 2024
      Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@HuntonAK.com
      ashleyharper@HuntonAK.com
      pguffy@HuntonAK.com

- and -

**LATHAM & WATKINS LLP**
George A. Davis (NY Bar No. 2401214)
Hugh Murtagh (NY Bar No. 5002498)
Tianjiao (TJ) Li (NY Bar No. 5689567)
Jonathan J. Weichselbaum (NY Bar No. 5676143)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
      hugh.murtagh@lw.com
      tj.li@lw.com
      jon.weichselbaum@lw.com

Ted A. Dillman (CA Bar No. 258499)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Email:  ted.dillman@lw.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 23, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II
