# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE CONTAINER STORE GROUP, ) | |
| INC., et al., ) | Case No. 24-90627 (ARP) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: January 24, 2025 |
| ) | Hearing Time: 1:00 p.m. |
| ) | |

## LIMITED OBJECTION BY THE U.S. SECURITIES AND EXCHANGE COMMISSION TO CONFIRMATION OF THE PREPACKAGED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
**[ECF ## 18 & 19]**

The U.S. Securities and Exchange Commission (the "SEC"), a statutory party in interest in these cases[1] and the federal agency responsible for enforcing the federal securities laws, objects to the confirmation of the Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code ("Plan") of The Container Store Group, Inc. ("The Container Store" or "TCSG") and its affiliates (collectively the "Debtors"), filed on December 23, 2024. In the SEC's view, the Plan contains a nonconsensual third-party release, which is prohibited under the Supreme Court's ruling in *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024). The release is nonconsensual as it applies to public shareholders and subordinated claimants because both classes are receiving no consideration and are deemed to reject the Plan. In these circumstances, their failure to return an opt-out form is insufficient evidence of consent to a third-party release.

---

[1] 11 U.S.C. § 1109(a) provides that "[t]he Securities and Exchange Commission may raise and appear and be heard on any issue in a case under this chapter. . . ."

## BACKGROUND

1.  TCSG is a publicly held corporation, and its common stock is currently trading on the Over-The-Counter (OTC) Open Market platform under the trading symbol "TCSGQ," after it was delisted from the New York Stock Exchange earlier in 2024.[2]

2.  TCSG filed its Chapter 11 petition on December 22, 2024, and on December 23, 2024, filed its Plan and disclosure statement. (Dkt. #1, 18) The Container Store has over 100 locations nationwide and an online store. (Dkt. #18 at 16, 18) Several factors created a challenging post-Covid retail environment, which significantly impacted the Company's performance after its peak in 2021. The Company's continued decline in performance and liquidity pressures lead to the bankruptcy filing. (Dkt. # 6 at ¶¶ 44-46)

## THE PLAN

3.  According to the disclosure statement, the purpose of the Plan is to deleverage TCSG's balance sheet and to provide it with access to new capital. TCSG is seeking to reduce its secured debt from approximately $243M to approximately $190M by converting a portion of its pre-petition term loans and DIP loans into new equity in the reorganized debtors. (Disc. St. at 1-3) The DIP loans will convert into exit financing. The prepetition ABL claims and the general unsecured claims will be paid in full from the DIP loans. Class 3 (pre-petition term loan lender claims) is the only impaired class that is entitled to vote on the Plan. (Disc. St. at 8) The Class 3 claims are expected to have a recovery of between 4.5%-17.6% on their prepetition claims. (Disc. St. at 5) The term loan lenders, at least 90% of which support the Plan, were given the opportunity to participate in the DIP financing. (Disc. St. at 1, 3) The *only* other impaired classes are the Class 5 Subordinated Claims and Class 8 Existing Equity Interests, which are the *only*

---

[2] According to TCSG's Form 10-Q for the period ended September 28, 2024, TCSG has 3,451,250 shares of common stock outstanding.

classes receiving no consideration at all, and which are deemed to reject the Plan. (Disc. St. at 5-8) The other classes, including General Unsecured Claims and the Prepetition ABL Claims, are unimpaired and are deemed to accept the Plan. (Disc. St. at 8)

4. The Plan contains a third-party release provision (the "Release") that purports to release claims by non-debtors against other non-debtors. (Plan at Art. IX.C.). Among the releasing parties are public shareholders in Class 8 and subordinated claimants in Class 5, all of whom are not entitled to vote on, or receive any recovery under, the Plan. The Plan provides that any shareholder or subordinated claimant who fails to opt out will be deemed to consent to the Release. (Plan at Art. I.A., ¶ 157, defining "Releasing Parties" to include "each Holder of a Claim or Interest in a Class … that does not affirmatively elect to opt out of the Releases contained in this Plan[.]")

5. The Release would bar shareholders, subordinated claimants, and other Releasing Parties from asserting claims against various categories of "Released Parties." (Plan at Art. I.A., ¶ 155), which are defined broadly to include each Debtor, each DIP lender, other lenders and, as to each of them, their "Related Parties," which would include, among others, their current and former officers and directors. (Plan at Art. I.A., ¶ 153).

## DISCUSSION

6. The SEC objects to the Plan because the Release is prohibited by the Supreme Court's ruling in *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024). The Release is nonconsensual as it applies to public shareholders (Class 8) and subordinated claimants (Class 5) because failure by public shareholders and subordinated claimants to return an opt-out form is insufficient evidence of their consent.

**Failure to Opt-Out of a Third-Party Release is Insufficient Evidence of Consent**

7.        The United States Supreme Court, in *Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024), altered the legal landscape for third-party releases. In *Purdue*, the Court identified the question as "whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*." *Id.* at 2081 (emphasis in original). The Court answered in the negative.

8.        Nothing in the Bankruptcy Code "authorize[s] a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at 2088. A critical implication of this ruling is that a third-party release provision is not just another plan provision that can bind non-objecting creditors and equity holders under Section 1141(a). *See Purdue*, 144 S.Ct. at 2081-2086 (explaining that, under Section 1123(b), a third-party release is not an "appropriate provision" in a Chapter 11 plan).

9.        Thus, the only basis for approving a nondebtor release after *Purdue* is an adequate showing by the plan proponent that the releasing party consents. The *Purdue* court did not express a specific view about what qualifies as a "consensual" release. *Id.* at 2087-2088. But the Court did cite to *In re Specialty Equipment Cos.*, 3 F.3d 1043 (7th Cir. 1993). *Id.* at 2088. In *Specialty Equipment*, the Court found that the release was consensual because "[i]t binds only those creditors voting in favor of the plan of reorganization." *Specialty Equipment,* 3 F.3d at 1047. Thus, "consent" required an affirmative act, *e.g.*, voting to accept the plan, and the *Specialty Equipment* court noted that "a creditor who votes to reject the Plan or abstains from voting may still pursue any claims against third-party nondebtors." *Id.*

10.       In the Northern District of Texas, Judge Everett in *In re Ebix, Inc.*, denied the effectiveness of an opt-out mechanism to third party releases for creditors who failed to return a

4

ballot. "Nothing in the Bankruptcy Code or Bankruptcy Rules provides for such relief, and under Texas contract law that the parties agree governs the third-party release under the Debtors' proposed plan, silence does not equal the consent of the affected claimants on this record." *See* Aug. 2, 2024 H'rg Tr., 5:12-16, *In re Ebix, Inc. et al*, No. 24-80004-SWE (Bankr. N.D. Tex. Aug. 2, 2024) (Dkt. # 851) (finding that parties who returned a ballot but failed to opt-out did consent to the release).

11. The question of whether a failure to opt-out of a release is sufficient proof of consent was recently addressed by Judge Goldblatt in *In re Smallhold, Inc.*, 2024 Bankr. LEXIS 2332 at *32 (Bankr. D. Del., Sept. 25, 2024) (concluding that non-voting unimpaired creditors should not be bound to a release because "in the absence of some sort of affirmative expression of consent that would be sufficient as a matter of contract law, the creditor's silence in the face of a plan and form of ballot can no longer be sufficient[,]" but finding that certain creditors who returned a ballot may be bound under ordinary contract principles). The Court found that the "affirmative step" of voting on the plan "coupled with conspicuous notice of the opt out mechanism," "suffices as consent to the third-party releases under general contract principles." *Id.* at *40. On the other hand, Judge Goldblatt found that creditors who were not solicited to vote on the plan (because they were being paid in full) lacked an affirmative expression of consent, and thus, their silence in failing to object to the release was insufficient to bind them. *Id.* at **38-39. Similarly, Judge Stickles in *In re Lumio Holdings, Inc.,* at the January 3, 2025 Hearing on the Motion for Entry of Order Approving the Combined Disclosure Statement and Plan on an Interim Basis and Related Relief, held that opt-out mechanisms for obtaining consent to third party releases must be examined case by case, and required an opt-in rather than an opt-out mechanism where claimants are not entitled to vote and are receiving no distribution. Jan. 3,

5

2025 H'rg Oral Decision at 28:00, *In re Lumio Holdings, Inc., et al.*, No. 24-11916 (JKS) (Bankr. D. Del. Jan. 3, 2025) (Dkt. # 418).

12. These rulings are consistent with several pre-*Purdue* cases that held that consent by non-voting shareholders generally could not be established by failing to opt-out. *See, e.g., In re Emerge Energy Services, LP*, Case No. 19-11563, 2019 WL 7634308 at *18 (Bankr. D. Del. Dec. 5, 2019); *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011); *accord Patterson v. Mahwah Bergen Retail Group, Inc.,* 636 B.R. 641, 684-86 (E.D. Va. 2022). However, in *In re Independence Contract Drilling, Inc.,* this Court recently ruled to the contrary and held that an opt out mechanism established consent to a third party release, even as to shareholders who were not receiving a distribution and deemed to reject the Plan. H'rg Oral Decision at 2:05; 4:40, *In re Independence Contract Drilling, Inc., et al.*, No. 24-90612-ARP (Bankr. S.D. Tex. Jan. 9, 2025) (Dkt. # 122).

13. Since the Supreme Court's ruling that no provision of the Bankruptcy Code authorizes third-party releases, "any such consensual agreement would be governed instead by state law." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (finding that "a failure to opt out will not suffice to bind a creditor").

14. To infer consent from nonresponsive creditors and equity holders, the Debtors must "show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties." *In re*

*Emerge Energy Services, LP*, Case No. 19-11563, 2019 WL 7634308 at *18 (citations omitted). *See also In re SunEdison, lnc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third party release."), *citing In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011).

15. The record in this case fails to support a finding under principles of contract law that TCSG shareholders or subordinated claimants who fail to return an opt-out form should be deemed to consent to the Release. None of the contract law criteria for implied acceptance exist here. Also, because they cannot vote, shareholders and subordinated claimants have not provided any "sort of affirmative expression of consent that would be sufficient as a matter of contract law," as was required by the court in *Smallhold*.

16. There are several reasons a public shareholder may not return an opt-out form. First, as many of the securities are held in street name, it is quite possible that the shareholder did not receive the opt-out form from his or her broker at all, or only received inadequate notice of such form.

17. The recent decision in *In re Robertshaw US Holding Corp.,* 662 B.R. 300 (Bankr. S.D. Tex., 2024) does not support the opt-out mechanism for public shareholders in this case.[3] *Robertshaw* involved a closely held corporation without public shareholders. *See* Voluntary Petition for Robertshaw US Holding Corp., Dkt. # 1 at 32 & 33 in *Robertshaw US Holding Corp.*, No. 24-90052 (Bankr. S.D. Tex., Feb. 15, 2024) (noting that "Range Parent, Inc." owns 100% of the Debtors' equity and is the sole shareholder).

---

[3] In the SEC's view, the *Robertshaw* decision was incorrectly decided. However, even if this Court accepts the opt-out analysis in *Robertshaw,* the facts of this case involving public shareholders are distinguishable from the facts in *Robertshaw* and its reasoning does not apply here.

18. To support its holding that opt-outs are sufficient to support the imposition of third-party releases, the *Robertshaw* court cites to the fact that "[t]he U.S. Supreme Court and the Fifth Circuit have also approved opt-outs in non-bankruptcy cases like class actions as providing consent." *In re Robertshaw US Holding Corp.*, 662 B.R. at 323 n. 120. However, the law governing class actions requires that (a) the class be specifically defined to identify the class members and the class claims; (b) the class be represented by counsel that can best "represent the interests of the class[,]"; (c) the Court ensure compliance with all of these requirements; and (d) the class action settlement be approved by the presiding court as "fair, reasonable, and adequate." *Patterson,* 636 B.R. at 686-87 (E.D. Va. 2022). Here, by contrast, public shareholders and subordinated claimants have no representative to protect their interests; the claims sought to be released are not specifically identified; and the Court need not determine if their treatment is fair, reasonable and adequate. If the Court were to conduct such an analysis, it would likely find that requiring shareholders and subordinated claimants who are receiving no consideration to affirmatively opt out of the Release is patently unfair and unreasonable.

19. Moreover, neither of the cases cited in *In re Robertshaw US Holding Corp.*, 662 B.R. at 323, for support of the opt-outs involved public investors, and the rationale underpinning one of the cases was subsequently questioned by its author in light of *Purdue*. The first case, *Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.)*, 597 B.R. 597 (S.D. Tex. 2019), involved the release of claims by a former employee. The second case, *In re Arsenal Intermediate Holdings, LLC,* 2023 Bankr. LEXIS 752; 2023 WL 2655592 (Bankr. D. Del., Mar. 27, 2023), involved the extension of the deadline for unsecured creditors to file release opt-out forms. However, Judge Goldblatt, who authored *Arsenal* decision before *Purdue* was decided, held in *Smallhold* that, in light of *Purdue,* the rationale of *Arsenal* was no longer valid.

*Smallhold*, 2024 Bankr. LEXIS 2332 at * 32 ("The rationale of *Arsenal,* under which the opt-out plan was permitted on the ground that the creditor's failure to opt out operated as a default, does not survive *Purdue Pharma.*").

20. Accordingly, in the SEC's view, the opt-out mechanism for equity holders and subordinated claimants, who are receiving no consideration under the Plan and are required to affirmatively opt out of the Release, does not survive the Supreme Court's holding in *Purdue.*

## CONCLUSION

For all of the foregoing reasons, the SEC requests that the Release be deleted from the Plan, or the Plan be amended to provide that Class 8 Existing Equity Holders and Class 5 Subordinated Claims be carved out of the Release or be required to opt in to the Release in order to be bound by it.

Dated: January 21, 2025
      New York, NY

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By:/s/ Patricia Schrage
   Patricia Schrage (admitted *pro hac vice*)
100 Pearl Street
Suite 20-100
New York, NY 10004
(212) 336-0163
Schragep@sec.gov

Of Counsel: Alistaire Bambach
          Morgan Bradylyons

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 21, 2025, a true and correct copy of the foregoing Objection was furnished on all ECF Participants via the CM/ECF system, and further, served by email upon the following:

**Counsel to the Debtors**

Ted A. Dillman (ted.dillman@lw.com)
Hugh Murtagh (hugh.murtagh@lw.com)
Tad Davidson (taddavidson@huntonak.com)
Ashley Harper (ashleyharper@huntonak.com

**Counsel to the DIP Agent**

Donald E. Rothman (drothman@riemerlaw.com)
Steven E. Fox (sfox@riemerlaw.com)
Rebecca L. Matthews (rmatthews@fbtlaw.com

**Counsel to the Ad Hoc Group**

Jayme Goldstein (jaymegoldstein@paulhastings.com)
Charles Persons (charlespersons@paulhastings.com)
Isaac Sasson (issacsasson@paulhastings.com
William Reily (williamreily@paulhastings.com)

**Counsel to the ABL Facility Agent**

Zachary Weiner (zachary.weiner@stblaw.com)

**Counsel to the Prepetition ABL Facility Agent**

Ian Kitts (ian.kitts@stblaw.com

**Counsel to the DIP Term Loan Agent**

Alex Cota (alexcota@paulhastings.com)

**Office of the United States Trustee**

Ha Nguyen (Ha.Nguyen@usdoj.gov)
Vianey Garza (Vianey.Garza@usdoj.gov

                                      /s/Patricia Schrage
                                      Patricia Schrage